CARKIDO, Appellee,

v.

HASLER, Appellant, et al.

[Cite as *Carkido v. Hasler* (1998), 129 Ohio App.3d 539.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 97 CA 35.

Decided Aug. 26, 1998.

540

*Rhonda L. Granitto,* for appellee.

*David J. Wolfe, Jr.,* for appellant.

---

VUKOVICH, Judge.

Appellant, Geoff Hasler, appeals from a judgment of the Mahoning County Common Pleas Court denying his motion for relief from judgment in regard to a default judgment rendered against him. For the following reasons, the judgment is affirmed.

## I. FACTS

Appellee, Michael Carkido, received a mail solicitation to become a local consultant for Telephone Bill Reduction Consultants, Inc. ("TBRC"). The solicitation pictured appellant and labeled him as president of TBRC. At the bottom of the advertisement, the address of TBRC was listed as 21550 Oxnard Street, Suite 300, Woodland Hills, California 91367, with the address 4190 Belfort Road, Suite 360, Jacksonville, Florida 32216 in small print below the California address. There was also an 800 number for interested parties to call. The solicitation included a guarantee, which stated that if the individual was "unhappy," he or she would be entitled to a "full, no questions asked refund" after the first one hundred eighty days. In addition to this, it had a specific section with the designation "please note," which read:

"We hold regular, highly informative 'Getting To Know You' Weekly Information Sessions at our offices in California and Florida, usually once a week.

"You may come to our office, meet our President (Geoff Hasler) and other people from all over America (just like you) who are interested in becoming an Affiliate. You may ask any questions you may have.

"Each Information Session lasts about two hours. There's no cost and absolutely no obligation. You're welcome to bring as many family members and friends as you wish. Due to the popularity of these Information Sessions, reservations are essential.

"Please call 1–800–851–4880 to reserve your seat(s) at the next Session."

Appellee decided to pursue the business opportunity and did so from October 1993 to March 1994, but with no success. Accordingly, and pursuant to the representations in the solicitation materials, appellee requested a refund pursuant to his money-back guarantee, which was never honored. As a result, appellee filed a complaint against appellant Geoff Hasler, Telephone Bill Reduction Consultants, Inc., John Doe, Inc., and John Doe. In that complaint, appellee requested compensatory damages, treble damages, and punitive damages.

Separate summons on the complaint were issued to appellant, Telephone Bill Reduction Consultants, Inc., John Doe, Inc., and John Doe by certified mail. They were all mailed to the Woodland Hills, California address listed on the advertisement. On June 5, 1995, the same individual, whose name was illegible, signed for service on each certified mail return. Those mail returns were filed with the Mahoning County Court of Common Pleas on June 7 and 8, of 1995.

Appellant failed to file an answer or otherwise defend against the action. Accordingly, on July 26, 1995, appellee filed a motion for default judgment and requested a hearing on the issue of punitive damages.

On August 1, 1995, the trial court found that service had been accomplished, and proceeded to enter judgment in favor of appellee in the amount of $13,980 (compensatory and treble damages). The court then scheduled a hearing to address the issue of punitive damages. Thereafter, on August 24, 1995, the trial court filed a judgment entry specifically identifying the breakdown of the award of damages. The breakdown was as follows: $3,495 compensatory damages; $10,485 treble damages (allowed by R.C. 1334.01 *et seq.*); $1,531 attorney fees; and $10,000 in punitive damages. The result was a total award of $25,511 plus interest.

After the award was entered, there was an attempt to serve the court's judgment entry on appellant at the Woodland Hills address. However, the clerk's docket reflected a failure of service, with a notation that appellant had moved and left no forwarding address. Counsel for appellee then provided a new address for appellant at 26500 W. Agoura Road, Suite 654, Calabasas, California 91302 and instructed the clerk to serve appellant by regular mail at that address.

Apparently, the Calabasas, California address was used only to receive unimportant bulk third-class mail. Therefore, over the ensuing year, there was attempted service of the August 24, 1995 entry on appellant, with seemingly no success. The clerk's docket reflected a February 9, 1996 entry evidencing the fact that a *copy* of the certified mail card was filed, showing a service date of December 16, 1995. However, that entry is conspicuous in light of the fact that the actual return receipt card is absent from the transcript provided to this court.

Appellee was forced to hire an attorney in California to obtain a sister-state judgment so as to enforce the Ohio judgment against appellant. Eventually, appellee's counsel was able to serve appellant with notice of the entry of the sister-state judgment at his residence address in Santa Barbara, California.

On November 27, 1996, appellant, d.b.a. Telephone Bill Reduction Consultants, filed a motion to void judgment or, in the alternative, for relief from judgment. He attached his affidavit, wherein he averred that he had never been served with a summons or complaint and that he maintained a limited "image identity" at the Woodland Hills, California address. Moreover, he stated in his affidavit that over two hundred businesses maintained offices at the Woodland Hills, California address, and his "walk-in" national public office was maintained in Jacksonville, Florida. Appellant also attested to the fact that he resided and maintained a full-time office in Santa Barbara, California, and that he visited the Woodland Hills office only approximately two times a month. Appellant claimed that his residence address was a matter of public record at all times. His affidavit also raised questions regarding who had signed the initial certified mail returns, claiming that if it was the general receptionist, he had neither employed her nor had given her the authority to sign as his agent.

In the memorandum of law attached to his motion, appellant further averred that he had a meritorious defense to present if relief was granted. He claimed that he had not violated any Ohio law or done anything else improper upon which a cause of action could be sustained. He also alleged that he had four affirmative defenses available to him, alleging that he was not making a general denial but a denial based on facts that he would be able to prove to the court. Appellant claimed that if the trial court allowed the relief he sought, he would present other evidence to show that the allegations made against him were unfounded.

Appellee filed a memorandum in opposition to appellant's motion. Appellee attached his affidavit, as well as the affidavit of his attorney, Kelly Burton, and the affidavit of Donald Zelinsky, the attorney from California whom appellee had hired to obtain the sister-state judgment against appellant. The response also had an attachment consisting of Ohio Attorney General documents, but there was no affidavit from anyone from the Attorney General's office to authenticate those documents.

On January 31, 1997, the trial court denied appellant's motion to void judgment and the alternative motion for relief from judgment, finding that proper service had been made upon appellant and that it could not "countenance the actions of Defendant Hasler to avoid process and litigation and then allow vacation of a properly issued judgment when all else fails." On February 12, 1997, almost two weeks after the trial court denied the motion to void judgment, appellant filed a reply to the memorandum in opposition. Basically, that reply attempted to distinguish the cases cited by appellee in his memorandum.

It is from the January 31, 1997 judgment entry that this appeal emanates, in which appellant asserts three assignments of error for this court's review.

## II. First and Second Assignments of Error

Appellant's first and second assignments of error will be addressed together for efficiency and clarity. Appellant's first assignment of error reads as follows:

"The trial court erred in failing to void the judgment or grant relief from the judgment when appellant filed an uncontroverted affidavit that he did not receive service."

The second assignment of error reads:

"The trial court erred in failing to void the judgment or grant relief from the judgment when appellant filed an uncontroverted affidavit in which he stated that he did not maintain a regular, habitual physical presence at any of the facilities where plaintiff attempted to serve him."

Appellant argues that it is an abuse of discretion for a court not to vacate a judgment when a party has presented unchallenged testimony that he did not receive service. In support of his assertion, appellant cites *Rogers v. United Presidential Life Ins. Co.* (1987), 36 Ohio App.3d 126, 521 N.E.2d 845, which states:

"Other Ohio appeals courts have held that when a party makes a sworn statement that he did not receive service, there must be a further evidentiary showing that the party was served to rebut the party's statement. A court may not draw inferences which are contrary to the party's statement * * *. This court has also held that a trial court abuses its discretion and it is reversible error for a court to overrule a party's motion to vacate a dismissal when the party has clearly demonstrated, through unchallenged testimony, that he had not received service. *Lin v. Reid* (1983), 11 Ohio App.3d 232, 11 OBR 356, 464 N.E.2d 189. This is true even if the other party has complied with the Civil Rules on service."

*Rogers* is distinguishable from the case at bar because it involved a Civ.R. 41(B) dismissal order that was entered after the plaintiff failed to respond to a

court order. The question involved was whether the first order was ever served. Appellant also cites *Rafalski v. Oates* (1984), 17 Ohio App.3d 65, 66–67, 17 OBR 120, 121–122, 477 N.E.2d 1212, 1215, wherein the court stated :

"Where a party seeking a motion to vacate makes an uncontradicted sworn statement that she never received service of a complaint, she is entitled to have the judgment against her vacated even if her opponent complied with Civ.R. 4.6 and had service made at an address where it could reasonably be anticipated that the defendant would receive it. * * * Appellant has presented no evidence to show that appellee actually received service it is reversible error for a trial court to disregard unchallenged testimony that a person did not receive service."

Appellee simply responds that appellant's affidavit was not "uncontroverted," due to the affidavits attached to appellee's memorandum in opposition to appellant's motion for relief from judgment. Of critical importance to the issues involved in the instant case were the various exhibits attached to appellee's memorandum in opposition, which included the solicitation letter, advertisements for TBRC, the money–back guarantee that promised a full refund if the buyer was dissatisfied after one hundred eighty days, and other documentation evidencing a business address at 21550 Oxnard Street, Suite 300, Woodland Hills, California 91367.

Since appellant's business was based in California, Civ.R. 4.3 governs with respect to out-of-state service, and states as follows:

"(A) When service permitted. Service of process may be made outside of this state, as provided in this rule, in any action in this state, upon a person who, at the time of service of process, is a nonresident of this state or is a resident of this state who is absent from this state. 'Person' includes an individual, his executor, administrator, or other personal representative, or a corporation, partnership, association, or any other legal or commercial entity, who, acting directly or by an agent, has caused an event to occur out of which the claim that is the subject of the complaint arose, from the person's:

"(1) Transacting any business in this state;

"(2) Contracting to supply services or goods in this state."

Civ.R. 4.3(B)(1) allows service by certified mail. Accordingly, since appellant transacted business inside Ohio, appellee could have him served in California by certified mail pursuant to the Civil Rules.

In order to further analyze appellant's first and second assignments of error we must now address two issues with respect to who may be served in order to complete service of process pursuant to the Civil Rules. The first issue involves the fact that appellee sued a corporation, when in fact appellant was not a

corporation but was doing business as TBRC. Therefore, the service rule governing corporations would not apply. The second issue involves the signature on the certified mail return. The signature was illegible, and appellant presumed it was that of the receptionist at the Woodland Hills address, which is a corporate center that serves over two hundred companies with a common reception area. Appellant claims that the receptionist was not his employee and that he did not maintain any full-time employees at the Woodland Hill's facility.

The issue concerning who signed the certified mail return is in this instance essentially irrelevant. Civ.R. 4.2 deals with who may be served with process. Under Civ.R. 4.2(H), an unincorporated association can be served "in its entity name by certified mail at any of its usual places of business or by serving an officer of the unincorporated association." Although the rule does not specifically state that an agent may be served, the fact that the certified mail return was signed by a person who was not an employee does not automatically invalidate the service, as long as the receipt was signed by a person at the named defendant's place of business. *United Fairlawn, Inc. v. HPA Partners* (1990), 68 Ohio App.3d 777, 589 N.E.2d 1344; Civ.R. 4.3(B)(1). It has been stated that a "civil defendant is not immune from certified mail service simply because it utilizes a nonemployee mailroom," which is analogous to the situation in the instant case where appellant used a nonemployee common reception desk area. *United Fairlawn* at 781, 589 N.E.2d at 1346–1347.

Since we have concluded that it is irrelevant who actually signed the certified mail return, we must now address the critical issue regarding whether the service in this particular case was reasonably calculated to reach appellant. The controlling case in Ohio regarding the sufficiency of certified mail service sent to a business address is *Akron–Canton Regional Airport Auth. v. Swinehart* (1980), 62 Ohio St.2d 403, 16 O.O.3d 436, 406 N.E.2d 811. In that case, the two defendants involved each owned an undivided one-half interest in real estate which the Akron–Canton Regional Airport Authority wanted to appropriate. Defendant Swinehart was president of the corporation that leased the property, and he managed the corporation's day-to-day operations. The other owner of the property was the vice-president of the corporation, defendant Sengpiel, but he was only an advisor and he did not actually maintain an office on the premises. Moreover, Sengpiel visited the premises only two to three times per month. The service of process was addressed to both defendants and was sent by certified mail to the address of the property to be appropriated. The receptionist-secretary signed the return receipt for the process and gave the two separate envelopes with the process to Swinehart. Swinehart never forwarded an envelope to Sengpiel. Accordingly, Sengpiel never received the process addressed to him.

The court in *Swinehart* looked to the decision in *Castellano v. Kosydar* (1975), 42 Ohio St.2d 107, 110, 71 O.O.2d 77, 78–79, 326 N.E.2d 686, 688–689, in which the court held:

"It should also be noted that certified mail, under the Rules of Civil Procedure, no longer requires actual service upon the party receiving the notice, but is effective upon certified delivery. Prior to its amendment in 1971, Civ.R. 4.1(1) stated that '* * * *if the return receipt shows failure of delivery to the addressee* the clerk shall forthwith notify, by mail, the attorney of record * * *.' (Emphasis added.) However, the above-italicized words were subsequently deleted, evidencing an intent to avoid the impression that certified mail, to be effective, had to be delivered to and signed by the addressee only."

After dealing with the question of who may be served, the *Swinehart* court turned to address the issue of where service by certified mail may be sent. The court analyzed the issue as follows:

"So long as service is 'reasonably calculated' to reach interested parties, then the service is constitutionally sound. Accordingly, it is not necessary that service be attempted through the most likely means of success ordinarily residence service; it is sufficient that the method adopted be 'reasonably calculated' to reach its intended recipient. We believe therefore that certified mail service sent to a business address can comport with due process if the circumstances are such that successful notification could be reasonably anticipated." *Akron–Canton Regional Airport Auth.*, 62 Ohio St.2d at 406, 16 O.O.3d at 438, 406 N.E.2d at 814.

The court determined that it is necessary to examine each case upon its own particular facts to determine if notice was reasonably calculated to reach the interested party.

Applying the above principles, the court in *Swinehart* found that service was not made in a manner "reasonably calculated" to reach Sengpiel. Basically, this was due to the fact that Sengpiel did not maintain an office on the premises at which there was an attempt to serve him, since his principal place of business was in another city. Affidavits also demonstrated that Sengpiel only sporadically visited the business, usually two or three times a month. There was no other evidence presented with respect to Sengpiel's conducting of business at that address.

■■ The facts in *Swinehart* are distinguishable from the facts in the case *sub judice* for several reasons. Most significant, appellant held himself out as being at the address listed on the advertisement or solicitation papers that were received by appellee. Moreover, appellee submitted an affidavit stating that he had contacted appellant at the Woodland Hills address and that he was told to

forward all materials there. It is also important that on the solicitation materials, appellant made a specific statement that weekly meetings would be held at the Woodland Hills address, as well as the address in Florida, and that people who were interested could meet him there.[1] Overall, the statements made by appellant in the solicitation documents, the affidavits filed in the case, and the fact that the materials and mail were to be sent to the Woodland Hills address suggest that appellant conducted business at the Woodland Hills address and that service could reasonably be calculated to reach him there.[2]

Another frequently cited case with respect to service of process issues is *Bell v. Midwestern Educational Services, Inc.* (1993), 89 Ohio App.3d 193, 624 N.E.2d 196. The court in *Bell* stated:

"The key principle is that in order to justify service on a defendant at a business address, the party being served must have such a habitual, continuous or highly continual and repeated physical presence at the business address that the party ordering the service of process would have reasonable grounds to calculate that the service would promptly reach the party being served." *Id.* at 202, 624 N.E.2d at 202.

Although appellant claims that he was at his business address only twice a month, the documentation attached to appellee's memorandum in opposition to appellant's motion to void judgment, as mentioned above, indicated that appellant was at the Woodland Hills address on a regular and highly continual basis. Certainly, we cannot find that the trial court abused its discretion with respect to its finding that there was sufficient service of process, since the judgment was supported by some competent, credible evidence going to all the essential elements of the case. *Id.* at 203, 624 N.E.2d at 202–203, citing *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578. We

---

1. It is curious how appellant could be in two places at the same time.

2. We feel it necessary to address an issue regarding some of the attachments to appellee's memorandum in opposition to appellant's motion to void judgment. The attachments contained investigative records from the office of the Ohio Attorney General that were not properly authenticated by the necessary affidavit. Accordingly, it would have been improper for the trial court to consider that evidence, as it would be improper for this court to consider that evidence. There were also many statements in the affidavits of appellee, of appellee's counsel, and of the California attorney retained by appellee that were outside of the personal knowledge of those individuals. "Personal knowledge" has been defined as " '[k]nowledge of the truth in regard to a particular fact or allegation, which is original, and does not depend on information or hearsay.' " *Brannon v. Rinzler* (1991), 77 Ohio App.3d 749, 756, 603 N.E.2d 1049, 1054, quoting Black's Law Dictionary (6 Ed.1990) 873. Ohio law establishes that statements contained in affidavits must be based on personal knowledge. *State v. Licsak* (1974), 41 Ohio App.2d 165, 169, 70 O.O.2d 325, 327–328, 324 N.E.2d 589, 593. Regardless, there was enough admissible evidence through the properly drafted affidavits, as well as the solicitation materials, to conclude that the Woodland Hills address was a regular place of business of appellant.

reject appellant's contention that the Woodland Hills address was merely an "image identity," when it is evident that claiming such was nothing more than a ruse to circumvent what was otherwise valid service of process on an out-of-state resident.

Appellant's first and second assignments of error are overruled.

### III. Third Assignment of Error

Appellant's third assignment of error reads:

"The trial court abused its discretion by failing to hold an evidentiary hearing on appellant's motion to void when appellant properly alleged and provided evidentiary support for his motion to void."

The seminal case regarding Civ.R. 60(B) motions is the Supreme Court of Ohio's decision in *GTE Automatic Elec., Inc. v. ARC Industries, Inc.* (1976), 47 Ohio St.2d 146, 1 O.O.3d 86, 351 N.E.2d 113. In that case, the court developed three essential elements needed in order to prevail on such a motion, and stated:

"[T]he movant must demonstrate that: (1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time, and, where the grounds of relief are Civ.R. 60(B)(1), (2) or (3), not more than one year after the judgment, order or proceeding was entered or taken." *Id.* at 150, 1 O.O.3d at 88, 351 N.E.2d at 116.

In *Kay v. Marc Glassman, Inc.* (1996), 76 Ohio St.3d 18, 19–20, 665 N.E.2d 1102, 1104–1105, the Supreme Court of Ohio held:

"[T]he trial court abuses its discretion in denying a hearing where grounds for relief from judgment are sufficiently alleged and are supported with evidence which would warrant relief from judgment. This holding is in accord with the underlying policies governing Civ.R. 60(B) and, in particular, the fact that Civ.R. 60(B) is a remedial rule to be liberally construed so that the ends of justice may be served." (Citation omitted.)

Accordingly, while in certain circumstances a hearing should be conducted to determine the merits of a motion for relief from judgment, it is not necessary if the grounds for relief from judgment are not sufficiently alleged on the face of the record. *Bates & Springer, Inc. v. Stallworth* (1978), 56 Ohio App.2d 223, 228, 10 O.O.3d 227, 230, 382 N.E.2d 1179, 1184–1185, citing *Adomeit v. Baltimore* (1974), 39 Ohio App.2d 97, 68 O.O.2d 251, 316 N.E.2d 469. Therefore, there is no question that a trial court can summarily deny a Civ.R. 60(B) motion without a hearing, and it is within its sound discretion to do so. *Id.*

Appellant's entire argument that the trial court should have granted his Civ.R. 60(B) motion is based on the alleged defective service of process, which was thoroughly addressed and analyzed above, and found to be without merit. Furthermore one of the elements to be shown before awarding relief is that the moving party has a meritorious defense or claim to present if relief is granted. Appellant's motion merely asserted a general denial of any violation of Ohio law, and he claimed to have several affirmative defenses available to him if relief was granted. While the burden on the moving party is only to *allege* operative facts which would constitute a meritorious defense, appellant failed to meet his burden. See *Colley v. Bazell* (1980), 64 Ohio St.2d 243, 247, 18 O.O.3d 442, 444–445, 416 N.E.2d 605, 608. Appellant presented absolutely no operative facts to show that he would have a meritorious defense if the trial court agreed to vacate the judgment that granted a default judgment against appellant. Therefore, we cannot hold that the trial court abused its discretion by overruling the motion for relief from judgment without first holding an evidentiary hearing, since there is sufficient evidence in the record to uphold the trial court's determination to deny the motion.

Appellant's third assignment of error is without merit.

For the preceding reasons, appellant's assignments of error are overruled and the judgment of the trial court is hereby affirmed.

*Judgment affirmed.*

Cox and GENE DONOFRIO, JJ., concur.