[This opinion has been published in *Ohio Official Reports* at 177 Ohio St.3d 1223.]

IN RE DISQUALIFICATION OF GALLAGHER.

THE STATE OF OHIO *v.* TUCKER.

[Cite as *In re Disqualification of Gallagher*, 2024-Ohio-6136.]

*Judges—Affidavits of disqualification—R.C. 2701.03—Several paragraphs of affidavit of disqualification stricken because they are not based on affiant's personal knowledge—Affiant showed that a reasonable and objective observer would harbor serious doubts about judge's impartiality toward defendant in underlying case based on judge's statement that defense counsel's appellate-court filing included "blatant lies"—Disqualification granted.*

(No. 24-AP-079—Decided July 30, 2024.)

ON AFFIDAVIT OF DISQUALIFICATION in Cuyahoga County Court of Common Pleas, General Division, Case No. CR-23-684036-B.

_____

**KENNEDY, C.J.**

{¶ 1} Joseph C. Patituce, counsel for Matthew Tucker, the defendant in the underlying criminal case, has filed an affidavit of disqualification pursuant to R.C. 2701.03 seeking to disqualify Judge Kelly A. Gallagher of the Cuyahoga County Court of Common Pleas, General Division, from presiding over the case. Judge Gallagher filed a response to the affidavit of disqualification.

{¶ 2} As explained below, because a reasonable and objective observer would harbor serious doubts about Judge Gallagher's impartiality toward Patituce, the affidavit of disqualification is granted. This matter is returned to the administrative judge of the Cuyahoga County Court of Common Pleas, General Division, for random reassignment to another judge of that division. *See* Sup.R. 36.011 and 36.019.

**Trial-Court Proceedings**

*Proceedings between August 25, 2023, and May 23, 2024*

{¶ 3} On August 25, 2023, Tucker was charged with aggravated murder and other offenses. The trial court's August 30 arraignment entry indicates that Tucker had retained attorneys Rachelle M. Smith and Joseph C. Patituce to represent him. At that time, Smith was an associate attorney at Patituce's law firm, Patituce & Associates.

{¶ 4} After arraignment, Judge Gallagher held 15 pretrial conferences. In 2023, the judge held pretrials on September 13 and 27, October 12 and 25, November 15, and December 13. In 2024, the judge held pretrials on January 10 and 22, February 26, March 12 and 20, April 17, and May 2, 13, and 21.

{¶ 5} The first scheduled trial date was January 22, 2024. At the request of the defendant, the trial was continued until March 20 and then again until June 3.

{¶ 6} In late April, Smith abruptly left Patituce & Associates. According to Catherine R. Meehan, a partner at the law firm, after Smith left the firm, Patituce met with Tucker to determine whether he wanted to continue to be represented by the Patituce law firm.

{¶ 7} Meehan and Patituce attended the May 2 pretrial before Judge Gallagher. At that time, Patituce noted that two of his cases were scheduled to be heard on June 3: *State v. Streets*, Cuyahoga C.P. No. CR-23-685323-A, and *State v. Tucker*, the underlying case. Patituce told the judge's bailiff that he was ready to proceed in the *Streets* case but that because he was not sufficiently familiar with the *Tucker* case, he would need a continuance in that case. On May 8, Patituce filed a motion to continue in *Tucker*, asserting the same facts he stated on May 2.

{¶ 8} Meehan also attended the May 13 pretrial in the *Tucker* case. At that time, the bailiff informed her that Judge Gallagher had denied Patituce's motion for a continuance of the June 3 trial in the *Tucker* case but then stated that there were three other homicide cases on the docket for that day. Meehan states that she took

that to mean that "trial [in the *Tucker* case] was unlikely to proceed." On May 21, Meehan was in court for pretrials for both *Streets* and *Tucker*. Meehan states that she asked Judge Gallagher's bailiff "which trial was up first" and that the bailiff stated that "*Streets* was up first." Meehan then looked at the trial calendar and noticed "that there was a separate trial on the books, even before *Streets*." Meehan asserts that she took that to mean "that Street[s] was second on the list for trial, and above Tucker and three other homicide cases."

{¶ 9} On May 23, Patituce filed a motion to compel the collection of specific DNA evidence in *Tucker*.

*June 3 Proceedings*

{¶ 10} When counsel appeared in court on June 3, Judge Gallagher called the *Tucker* case for trial—not *Streets* or any of the other homicide cases that had been scheduled for that day. Patituce indicated to the judge that on March 11, 2024, the court scheduled the *Streets* trial for June 3 and that in accordance with the Rules of Superintendence, the *Streets* case should proceed because the trial in that case had been scheduled before the *Tucker* trial. Attorney Nicholas Froning, counsel in a civil action related to the *Streets* case, has provided an affidavit averring that he was present in the courtroom on June 3 and that he expected that the *Streets* criminal trial would go forward at that time.

{¶ 11} Patituce then addressed the judge and provided several reasons why the *Tucker* case could not go forward, including but not limited to (1) that he did not have the file with him, because the bailiff had assured him that the *Streets* case would be heard first, (2) that he had childcare responsibilities later that week, and (3) that Tucker's rights under the Sixth Amendment to the United States Constitution would be violated if the case proceeded to trial on June 3 because the State had recently released a "phone dump" of records and Patituce had not yet had an opportunity to review them, he had recently received the name of a new potential

exculpatory witness and needed additional time to investigate, and he had not yet received the evidence he had requested for DNA testing.

{¶ 12} In response, Judge Gallagher noted that Patituce was identified on the arraignment entry as counsel of record. Patituce responded that Smith had represented Tucker and that he had not filed a notice of appearance in the case. In response, Judge Gallagher stated that the *Tucker* case had been on the court's overage case list for a long time and that the *Streets* case was not yet beyond the time guidelines. The judge added that she could call a recess and continue the *Tucker* trial until the next week to accommodate Tucker's childcare obligations. The following exchange then occurred:

> THE COURT: With regard to additional discovery, there has been ample time. I am not sure exactly at what point this Court is not supposed to be handcuffed by what counsel chooses to do and not to do. So if the Court of Appeals is to reverse me on the fact that I have to draw the line somewhere, then so b[e] it. I can try the case again. That's fine with me.
>
> So we will begin.
>
> MR. PATITUCE: Your Honor, as I have no notice of appearance, I can't go forward. I don't believe Attorney Meehan has a notice of appearance either. Mr. Tucker would be going forward without counsel?
>
> THE COURT: Then why are you here?
>
> MR. PATITUCE: As a courtesy to the Court, Your Honor. We understood that, based on the conversations outside, that Mr. Tucker would have adequate time to be able to place together his defense. Attorney Smith is his attorney of record. She has never withdrawn from the case. We were here because we believe he has

4

a valid, viable defense. He has exculpatory evidence that we just learned about, and if we give him time, he can put together a valid, viable defense. Without notices in, neither Attorney Meehan or I, he would be going forward without counsel. I don't think that's appropriate.

THE COURT: Have you accepted any funds in this case?

MR. PATITUCE: Attorney Smith had an agreement with Mr. Tucker.

THE COURT: Does that go in where you benefited from that fee agreement?

MR. PATITUCE: I'm sure it did.

Your Honor, without a notice of appearance, we can't go forward. I understand the Court's ruling on this, but the Sixth Amendment requires that he have adequate time with his attorney. I only had three weeks to prepare for this case. That's not enough time to get ready. We probably won't have the file printed out until Monday, at best. It's a massive file. We're talking about videos and witnesses. We aren't asking for a long continuance. We can try this case this month. We're only asking for a brief continuance.

**{¶ 13}** Judge Gallagher called a recess to consider Patituce's request. The judge's bailiff then informed counsel that Patituce's motion to continue was denied and that the *Tucker* case would proceed to trial that day. Judge Gallagher issued an entry denying the motion to compel the collection of DNA evidence, and the parties commenced jury selection.

**{¶ 14}** Patituce claims that after breaking for lunch, Judge Gallagher did not return to the courtroom for the remainder of the day and that her bailiff informed

counsel that they should use their time to review the new discovery. Patituce further asserts that when he asked for permission to return to his office to obtain the *Tucker* file, the bailiff forbade him from leaving the courthouse floor. At approximately 4:15 p.m., the bailiff informed counsel that the parties could leave for the day.

{¶ 15} At some point on June 3, Patituce appealed Judge Gallagher's decision denying the motion to compel the collection of DNA evidence to the Eighth District Court of Appeals. Patituce filed a memorandum in support of appellate jurisdiction in which he stated that Judge Gallagher's bailiff had repeatedly assured Meehan and himself that the *Tucker* case would not go forward on June 3 and that the *Streets* case would be heard first. In support of the memorandum, Patituce submitted his own affidavit, an affidavit from Meehan, and an affidavit from Froning. Also on June 3, Patituce, on behalf of Tucker, filed a complaint for a writ of prohibition against Judge Gallagher in the court of appeals, challenging her denial of Patituce's oral request for a continuance.

*June 4 Proceedings*

{¶ 16} On June 4, Tucker refused to change out of his jail uniform before appearing in court. Judge Gallagher asked him on the record why he had not changed, and he replied, "I did not know what was going to happen today, so I didn't want to dress." Upon further questioning by the judge, Tucker decided to remain in his jail uniform on June 4 but indicated that he would dress in civilian clothes for the remainder of the trial.

{¶ 17} Before jury selection continued, Patituce again raised several issues. He asserted that he was unprepared for the *Tucker* trial and that proceeding would be in violation of the Rules of Professional Conduct. Patituce also stated that he had not filed a notice of appearance in the *Tucker* case; that he had not prepared the *Tucker* case for trial, based on the bailiff's repeated representations that the *Streets* case would be heard first; and that the Rules of Superintendence required the *Streets* case to be heard first because it had been scheduled first.

{¶ 18} The prosecution also took issue with Judge Gallagher's denial of the motion for a continuance. First, the prosecution asserted that the State could not defend against an ineffective-assistance-of-counsel claim when the defendant's lawyer had repeatedly said that he was not prepared to try an aggravated-murder case. Second, the prosecution took issue with the judge's comment that she would try the case twice if the court of appeals overruled her decision to deny the motion for a continuance. The prosecution stated that the State did not want to put the victim's family through two trials and that continuing the trial until late June or mid-July would avoid the problems Patituce had identified.

{¶ 19} In response, Judge Gallagher asserted that her bailiff had "made clear . . . that this case would go forward as opposed to the other case," that the hierarchy of hearings under the Rules of Superintendence does not apply when two cases have been scheduled in the same court, that Patituce was identified on the arraignment entry as counsel for Tucker and had filed motions on Tucker's behalf, and that Tucker had been in jail for more than a year. The judge then called a recess.

{¶ 20} Upon returning, Judge Gallagher stated that she had reviewed the memorandum in support of appellate jurisdiction that Patituce had filed in the court of appeals. The judge then placed her bailiff under oath, and the bailiff denied that she had indicated to counsel "if a trial [was] or [was] not going forward." Then the following exchange occurred:

> THE COURT: Okay. So for whatever understanding from speaking with my bailiff, these are blatant lies that were in this motion. I just wanted to make that clear for the record.
>
> MR. PATITUCE: I'm sorry. The Court has referred to three licensed attorneys as having blatant lies?
>
> THE COURT: Correct.

MR. PATITUCE: Your Honor, at this time I'm going to ask you to recuse yourself. You've demonstrated nothing but a bias towards the defense. Thank you.

THE COURT: All right. And I also just want to make it clear who is representing Mr. Tucker at this time?

MR. PATITUCE: Your Honor, I'm representing Mr. Tucker.

THE COURT: Okay. But you've made it clear that you haven't filed a notice of appearance. Do you have an intention to file a notice of appearance at any time in the near future?

MR. PATITUCE: If a reasonable continuance is granted, yes, I'll formally do so.

THE COURT: And you've had ample time to file these motions. What's holding you back from filing a motion of appearance?

MR. PATITUCE: Your Honor, I'm not answering questions at this time. There's no jurisdiction of the Court. The Court has demonstrated nothing but a bias towards the defense.

THE COURT: All right. And then I just want to address a few more matters really quickly. . . . There was multiple mentions about the Court saying that I don't care if I try this again.

I want to make it very clear I said this. I did say this, but when I said this, I was making it clear that if the Court of Appeals ever finds that this Court has done something wrong, of course, this has to be tried again, and, of course, I would do so.

These comments weren't made to say I want to try cases twice. The goal is to always give someone a fair trial. And if the Court of Appeals found there was some error, then I can try it again.

So be it.  And that was the point I was trying to make and I want that clear for the record.

**{¶ 21}** After the court recessed, Patituce and the prosecution filed a joint motion for a continuance, requesting that Tucker's trial be rescheduled for July 15.

**{¶ 22}** Judge Gallagher granted the joint motion for a continuance except that she rescheduled the trial for June 24.  The judgment entry also appointed counsel:

> When specifically questioned by the court, counsel Joseph Patituce would not confirm whether he or Ms. Meehan represent the defendant in this case . . . .
>
> . . .
>
> Because counsel will not confirm representation, the court is put in a rather unique predicament that necessitates the protection of rights.  As such, the court assigns the defendant counsel—attorney Thomas E. Shaughnessy and Craig Smotzer.  Mr. Smotzer and Mr. Shaughnessy shall represent the defendant until such time as a notice of appearance is filed in this case.

**{¶ 23}** Patituce then immediately filed a notice of appearance.  Also on June 4, the court of appeals sua sponte dismissed Patituce's appeal for lack of a final, appealable order and dismissed the complaint for a writ of prohibition.

*Proceedings between June 5 and 14*

**{¶ 24}** On June 5, Patituce filed a notice to correct the trial-court record, arguing that the judge's June 4 entry appointing new counsel contained a material misrepresentation about him.  Patituce's filing noted that (1) when Judge Gallagher asked him on June 4 who was representing Tucker, Patituce expressly confirmed

that he was and (2) the judge's entry falsely stated that he had refused to confirm whether he or Meehan was representing Tucker. On June 7, Judge Gallagher sua sponte referred Tucker to the court psychiatric clinic to undergo evaluations to assess his competency to stand trial and his sanity at the time of the alleged acts.

{¶ 25} On June 11, the judge scheduled a pretrial conference for June 13. At the June 13 pretrial, Patituce made a request for Judge Gallagher to recuse. In support of the request for recusal, he filed a "proffer of evidence in support of oral motion." In the filing, Patituce reiterated his concerns, including Judge Gallagher's accusation that the attorneys representing Tucker had said "blatant lies." Attached to the filing were several affidavits, including one from Tucker and one from Tracy Davis, Tucker's mother. Tucker stated that he and his family had hired Smith and that Smith was the only attorney he had spoken to at the Patituce firm. Davis affirmed Tucker's testimony and stated that she had hired only Smith, that she did not learn who Patituce was "until long after [she] hired" Smith, and that Patituce had not become involved in Tucker's case until Smith withdrew.

{¶ 26} At the commencement of the June 13 pretrial, Judge Gallagher explained that she had ordered Tucker to undergo a competency evaluation based on his June 4 communications with her about his clothing. The judge believed that Tucker appeared confused, and she wanted to ensure that he understood the nature of the proceedings against him. The judge also noted that the statement in her June 4 entry about Patituce's refusing to confirm whether he was representing Tucker was based on Patituce's repeated assertions that he had not filed a notice of appearance in the *Tucker* case. The judge stated that her June 4 entry was "based on what [she] heard at the time of the hearing" and that she was confused by Patituce's varying statements. Judge Gallagher also stated that her assertion that the attorneys' statements were "blatant lies" was based on her bailiff's testimony. After giving Patituce an opportunity to respond to her comments and make a record, the judge scheduled another pretrial for June 21.

10

**{¶ 27}** On June 14, Patituce filed this affidavit of disqualification.

### Affidavit-of-Disqualification Proceedings

**{¶ 28}** R.C. 2701.03(A) provides that if a judge of a court of common pleas "allegedly is interested in a proceeding pending before the court, allegedly is related to or has a bias or prejudice for or against a party to a proceeding pending before the court or a party's counsel, or allegedly otherwise is disqualified to preside in a proceeding pending before the court," then that party or the party's counsel may file an affidavit of disqualification with the clerk of this court.

**{¶ 29}** Patituce alleges that Judge Gallagher is biased and prejudiced against Tucker and himself and that the judge should be disqualified to avoid the appearance of partiality. The judge denies being biased or prejudiced against Tucker or Patituce and denies that there are any grounds for disqualification.

**{¶ 30}** Prior to addressing the allegations in the affidavit of disqualification, there is a preliminary issue—whether Patituce's affidavit is valid. Certain portions of it are not.

*Requirements of an Affidavit*

**{¶ 31}** This court has long held that "an affidavit must appear on its face to have been . . . in compliance with all legal requisitions." *Benedict v. Peters*, 58 Ohio St. 527, 536 (1898). In Ohio, an affidavit is a "written declaration [made] under oath." R.C. 2319.02. As such, an affidavit is a form of written testimony. *See Wallick Properties Midwest, L.L.C. v. Jama*, 2021-Ohio-2830, ¶ 18 (10th Dist.). A party may present testimony to a court only if "evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Evid.R. 602. A witness is traditionally "'incompetent' to testify to any fact unless he or she possesses firsthand knowledge of that fact." Weissenberger, *Weissenberger's Ohio Evidence Treatise*, § 602.1 (2024); *see State v. Fears*, 1999-Ohio-111, ¶ 36 (determining that testimony not based on personal knowledge was inadmissible). Therefore, "statements contained in affidavits must be based on personal

knowledge." *Carkido v. Hasler*, 129 Ohio App.3d 539, 548, fn. 2 (7th Dist. 1998); *see* 2A C.J.S., Affidavits, § 46 (2023); *see also, e.g.*, Civ.R. 56(E); S.Ct.Prac.R. 12.02(B)(2).

{¶ 32} "'Personal knowledge' is 'knowledge gained through firsthand observation or experience, as distinguished from a belief based on what someone else has said.'" *Bonacorsi v. Wheeling & Lake Erie Ry. Co.*, 2002-Ohio-2220, ¶ 26, quoting *Black's Law Dictionary* (7th Rev.Ed. 1999). It follows that "'[o]ne who has no knowledge of a fact except what another has told him cannot, of course, satisfy the . . . requirement of knowledge from observation.'" *Dublin City School Dist. Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 1997-Ohio-327, ¶ 12, quoting 1 McCormick, *Evidence*, § 10, at 40 (4th Ed. 1992).

{¶ 33} Several paragraphs of Patituce's affidavit are not based on his personal knowledge. Instead, they are based on secondhand knowledge or information that he would not be able to testify to, because he does not have firsthand knowledge of those facts. Therefore, the following paragraphs are stricken from Patituce's affidavit of disqualification: Nos. 7, 8, 9, 12, 45, 62, 64, 73, 77, 92, and 93.

*Bias or the Appearance of Partiality*

{¶ 34} In support of the allegations that Judge Gallagher is biased and prejudiced or should be disqualified to avoid the appearance of partiality, Patituce points to the same evidence: the judge's comments and conduct between June 3 and 13. Regarding the judge's comments, Patituce primarily claims that the judge stated that she did not care whether she had to try Tucker's case twice, the judge described Patituce and Meehan as "blatant li[ars]" based on the testimony of the judge's own bailiff, and the judge made a "false statement" in court and in a journal entry indicating that Patituce had refused to confirm whether he was representing Tucker. Patituce states that "[t]he only conclusion that can be drawn from the judge's

objectively false statements on the record . . . is that she has a bias and prejudice against counsel and Mr. Tucker."

{¶ 35} Regarding the judge's other conduct, Patituce primarily claims that the judge showed bias by refusing to give him reasonable time to prepare for trial, by sua sponte referring Tucker to the court psychiatric clinic without any legitimate reason, by removing Patituce as counsel, and by denying the motion to compel the collection of DNA evidence.

{¶ 36} In response, Judge Gallagher denies being biased or prejudiced or that there is an appearance of impropriety or partiality. The judge states that her comment that she "did not care" whether the *Tucker* case is tried twice was taken out of context. The judge asserts that she was merely noting for the record that if the court of appeals determined that she had erred by denying the motion for a continuance, she would try the case a second time. Within the proper context, the judge maintains, her comment was reasonable and is not evidence of bias or prejudice.

{¶ 37} Judge Gallagher admits that she stated that Patituce had asserted "blatant lies" in an appellate-court filing. The judge asserts that this was an objective statement based on the sworn testimony of her bailiff, who the judge believes is a trustworthy person.

{¶ 38} Similarly, Judge Gallagher states that her comment that Patituce had refused to confirm that he was representing Tucker was an objective statement based on Patituce's varying representations to the court. The judge recognizes that when she directly questioned Patituce on June 4, he acknowledged that he was representing Tucker. But the judge then points to Patituce's statement that he would file a notice of appearance *if* the court granted a reasonable continuance. Based on this exchange, the judge states that "[i]t was objectively unclear whether [Patituce] and his co-counsel officially represented Tucker."

{¶ 39} Regarding her rulings on Patituce's motions to continue the *Tucker* case, Judge Gallagher states that because she had denied Patituce's May 8 motion to continue, she was under no obligation to reconsider that decision when Patituce orally made the same arguments in court on June 3. The judge further states that her rulings were based on the established time guidelines of this court. The judge denies removing Patituce as counsel of record for Tucker but argues that because he would not file a notice of appearance until a continuance was granted, she acted within her judicial discretion to assign court-appointed counsel to protect Tucker's rights. Lastly, the judge states that Patituce's disagreements with her other orders, such as those referring Tucker for a competency evaluation and denying the motion to compel the collection of DNA evidence, are not evidence of bias or prejudice.

### Disqualification of a Common-Pleas-Court Judge

{¶ 40} As explained above, R.C. 2701.03(A) sets forth two specific grounds and a catchall provision for the disqualification of a judge of the court of common pleas. Granting or denying the affidavit of disqualification turns on whether the chief justice determines that the allegations of interest, bias or prejudice, or disqualification set forth in the affidavit exist. R.C. 2701.03(E).

{¶ 41} The burden falls on the affiant to submit "specific allegations on which the claim of interest, bias, prejudice, or disqualification is based and the facts to support each of those allegations." R.C. 2701.03(B)(1). Therefore, "[a]n affidavit must describe with specificity and particularity those facts alleged to support the claim." *In re Disqualification of Mitrovich*, 2003-Ohio-7358, ¶ 4.

{¶ 42} Patituce alleges two bases for Judge Gallagher's disqualification— the judge is biased and prejudiced against him and Tucker and the judge should be disqualified to avoid the appearance of partiality.

{¶ 43} "The term 'bias or prejudice' 'implies a hostile feeling or spirit of ill-will or undue friendship or favoritism toward one of the litigants or his attorney, with the formation of a fixed anticipatory judgment on the part of the judge, as

14

contradistinguished from an open state of mind which will be governed by the law and the facts.'" *In re Disqualification of O'Neill*, 2002-Ohio-7479, ¶ 14, quoting *State ex rel. Pratt v. Weygandt*, 164 Ohio St. 463, 469 (1956). "'Bias or prejudice on the part of a judge will not be presumed. In fact, the law presumes that a judge is unbiased and unprejudiced in the matters over which he presides, and bias and prejudice must be strong enough to overcome the presumption of his integrity.'" *Id.* at ¶ 16, quoting 48A C.J.S., Judges, § 108, at 731 (1981). A determination of whether a judge is biased or prejudiced is based on the judge's words and/or actions and whether those words and/or actions convey that the judge is predisposed to a particular outcome of a case.

{¶ 44} An appearance of impropriety or partiality is not among the grounds for disqualification specified in R.C. 2701.03. However, a judge "otherwise is disqualified" under R.C. 2701.03(A) when none of the express bases for disqualification—interest, relation to a party, bias, or prejudice—apply but other grounds for disqualification exist. *See generally In re Disqualification of Schooley*, 2023-Ohio-4332, ¶ 19 (citing examples of when a judge was "otherwise . . . disqualified"). Although the statute speaks in terms of *actual* bias and prejudice, it has long been recognized that "even in cases in which no evidence of actual bias or prejudice is apparent, a judge's disqualification may be appropriate to avoid an appearance of impropriety," *In re Disqualification of Crawford*, 2017-Ohio-9428, ¶ 6.

{¶ 45} "The proper test for determining whether a judge's participating in a case presents an appearance of impropriety is . . . an objective one. A judge should step aside or be removed if a reasonable and objective observer would harbor serious doubts about the judge's impartiality." *In re Disqualification of Lewis*, 2004-Ohio-7359, ¶ 8. "The reasonable observer is presumed to be fully informed of all the relevant facts in the record—not isolated facts divorced from their larger context." *In re Disqualification of Gall*, 2013-Ohio-1319, ¶ 6.

**Analysis**

**{¶ 46}** Because there is cause to grant the affidavit of disqualification on the basis of the appearance of impropriety, there is no reason to address the allegation of bias and prejudice. For the reasons explained below, Patituce has established that Judge Gallagher's disqualification is warranted.

**{¶ 47}** As explained above, "[i]n Ohio, a judge may be disqualified when the judge subjectively harbors hostility or animosity toward a litigant or counsel." *In re Disqualification of Clark*, 2023-Ohio-4774, ¶ 48. "A judge may also be disqualified under an objective appearance-of-bias or impropriety standard: when 'a reasonable and objective observer would harbor serious doubts about the judge's impartiality.'" *Id.*, quoting *Lewis*, at ¶ 8. "'An appearance of bias can be just as damaging to public confidence as actual bias.'" *Id.* at ¶ 59, quoting *In re Disqualification of Murphy*, 2005-Ohio-7148, ¶ 6. "'[T]he law requires not only an impartial judge but also one who appears to the parties and the public to be impartial.'" *Id.*, quoting *In re Disqualification of Corrigan*, 2005-Ohio-7153, ¶ 11.

**{¶ 48}** At issue here is not whether Judge Gallagher is actually biased and prejudiced against Tucker or Patituce. Instead, the issue is whether an objective observer, fully informed of all relevant facts, would harbor serious doubts about the judge's impartiality based on her statement that Patituce's appellate-court filing included "blatant lies" made by three attorneys. True, judges are entitled to express dissatisfaction with conduct that they perceive as unprofessional, "'although that dissatisfaction can and should be expressed in a way that promotes public confidence in the integrity, dignity, and impartiality of the judiciary.'" *In re Disqualification of Bickerton*, 2023-Ohio-1104, ¶ 8, quoting *In re Disqualification of Corrigan*, 2004-Ohio-7354, ¶ 10. Judge Gallagher's "blatant lies" comment, however, does not promote public confidence in the impartiality of the judiciary. Such a public stance hinders a party and counsel from the beginning. The judge was so firm in her conviction that the three attorneys had lied that she doubled down

on her "blatant lies" comment during the June 14 pretrial, even though there was substantial evidence supporting Patituce's assertion. This conduct would cause a reasonable and objective observer to harbor serious doubts about Judge Gallagher's ability to impartially consider any future arguments and evidence that Patituce may present in the underlying case.

{¶ 49} It would be difficult to expect a judge to preside over a case fairly and impartially when the judge is convinced that a party's counsel is lying to the tribunal, which would be an explicit violation of the Rules of Professional Conduct. *See* Prof.Cond.R. 3.3(a)(1). Counsel would be, at least from a perception standpoint, at an immediate disadvantage in terms of getting a fair hearing from the judge on any filing before the court. In conjunction, it is unlikely that a party, or the party's counsel, would expect to receive a fair trial when the judge has explicitly labeled counsel—the person in whose hands the party has placed the party's legal fate—as a liar and then subsequently reaffirmed that label. That conduct erodes not only trust in the judicial system in the eyes of the public but also the trust between attorney and client. So, based on the record in the underlying proceeding, Judge Gallagher's impartiality toward Patituce is in question.

{¶ 50} As this court has long stated, "[i]t is of vital importance that the litigant should believe that he will have a fair trial," *State ex rel. Turner v. Marshall,* 123 Ohio St. 586, 587 (1931). In this case, it is fair to say that Patituce and Tucker no longer believe that Tucker would have a fair trial before Judge Gallagher, and an objective observer who has reviewed the record and transcripts might reasonably agree. "When the case becomes about the judge rather than the facts of the case and the law, it is time for the judge to step aside." *In re Disqualification of Saffold,* 2010-Ohio-6723, ¶ 2.

{¶ 51} Therefore, to allay any concerns about the fairness and integrity of the proceedings and to ensure for the parties and the public the unquestioned

neutrality of the trial-court judge, Judge Gallagher will no longer preside over Tucker's case.

## Conclusion

**{¶ 52}** The affidavit of disqualification is granted.  This matter is returned to the administrative judge of the Cuyahoga County Court of Common Pleas, General Division, for random reassignment to another judge of that division.

————————————