[This opinion has been published in *Ohio Official Reports* at 177 Ohio St.3d 1241.]

IN RE DISQUALIFICATION OF GOERING.

SIDLOSKI *v*. FISCHER.

[Cite as *In re Disqualification of Goering*, 2024-Ohio-6137.]

*Judges—Affidavits of disqualification—R.C. 2701.03—Affiant failed to present evidence to support one of the bases for disqualification set forth in R.C. 2701.03(A)—Disqualification denied.*

(No. 24-AP-123—Decided August 29, 2024.)

ON AFFIDAVIT OF DISQUALIFICATION in Hamilton County Court of Common Pleas, General Division, Case No. A-2200702.

_____

KENNEDY, C.J.

{¶ 1} John J. Uustal, attorney for David Sidloski, the plaintiff in the underlying civil case, has filed an affidavit of disqualification pursuant to R.C. 2701.03 seeking to disqualify Judge Robert A. Goering of the Hamilton County Court of Common Pleas, General Division, from presiding over the case. Judge Goering filed a response to the affidavit of disqualification.

{¶ 2} As explained below, Uustal has not established that the judge should be disqualified. Therefore, the affidavit of disqualification is denied. The case shall proceed before Judge Goering.

**Trial-Court Proceedings**

{¶ 3} Sidloski has brought a negligence claim against the operator of a 2018 Yamaha 212X jet boat and product-liability claims against three Yamaha corporate entities (collectively, "Yamaha"), alleging that the operator and Yamaha proximately caused the wrongful death of Allyson M. Sidloski. The matter was set for a jury trial on August 26, 2024.

**{¶ 4}** In advance of trial, 42 motions were filed by the parties, 12 by the plaintiff and 30 by the defendants. These motions included motions for summary judgment and motions in limine. The motions for summary judgment and attachments alone spanned approximately 3,400 pages.

**{¶ 5}** Oral argument on Yamaha's motion for summary judgment was scheduled for August 2. That day, Judge Goering asked the parties whether there was any objection to his meeting separately with Uustal and counsel for Yamaha in chambers off the record. No one objected.

**{¶ 6}** During the unrecorded in-chambers conferences, counsel for Yamaha agreed to continue the trial. Later that night, Uustal left a voicemail for the judge's clerk indicating that he too agreed to a continuance; the clerk received the voicemail on August 5.

**{¶ 7}** After the in-chambers conferences concluded, Judge Goering heard arguments on Yamaha's motion for summary judgment.

**{¶ 8}** On August 12, Uustal filed the affidavit of disqualification.

**Affidavit-of-Disqualification Proceedings**

**{¶ 9}** R.C. 2701.03(A) provides that if a judge of the court of common pleas "allegedly is interested in a proceeding pending before the court, allegedly is related to or has a bias or prejudice for or against a party to a proceeding pending before the court or a party's counsel, or allegedly otherwise is disqualified to preside in a proceeding pending before the court," then that party or the party's counsel may file an affidavit of disqualification with the clerk of this court.

**{¶ 10}** Uustal alleges that Judge Goering should be disqualified to "avoid the appearance of bias, prejudice, and/or impropriety."

**{¶ 11}** Before considering Uustal's allegations against Judge Goering, a preliminary matter must be addressed: whether Uustal's affidavit and the third-party affidavits submitted with the affidavit of disqualification are sufficient under

2

Ohio law. A portion of Uustal's affidavit and portions of Sidloski's affidavit are not.

*Requirements of an Affidavit*

{¶ 12} This court has long held that "an affidavit must appear on its face to [be] . . . in compliance with all legal requisitions." *Benedict v. Peters*, 58 Ohio St. 527, 536 (1898). In Ohio, an affidavit is a "written declaration [made] under oath." R.C. 2319.02. As such, an affidavit is a form of written testimony. *See Wallick Properties Midwest, L.L.C. v. Jama*, 2021-Ohio-2830, ¶ 18 (10th Dist.). A party may present a witness's testimony to a court only if "evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Evid.R. 602. A witness is traditionally "'incompetent' to testify to any fact unless he or she possesses firsthand knowledge of that fact." Weissenberger, *Weissenberger's Ohio Evidence Treatise*, § 602.1 (2024); *see also State v. Fears*, 1999-Ohio-111, ¶ 36 (determining that testimony not based on personal knowledge was inadmissible). Therefore, "statements contained in affidavits must be based on personal knowledge." *Carkido v. Hasler*, 129 Ohio App.3d 539, 548, fn. 2 (7th Dist. 1998); *see* 2A C.J.S., Affidavits, § 46, at 285-287 (2023); *see, e.g.*, Civ.R. 56(E); S.Ct.Prac.R. 12.02(B)(2).

{¶ 13} "'Personal knowledge' is '[k]nowledge gained through firsthand observation or experience, as distinguished from a belief based on what someone else has said.'" (Bracketed text in original.) *Bonacorsi v. Wheeling & Lake Erie Ry. Co.*, 2002-Ohio-2220, ¶ 26, quoting *Black's Law Dictionary* (7th Ed. 1999). It follows that "'[o]ne who has no knowledge of a fact except what another has told him cannot, of course, satisfy the . . . requirement of knowledge from observation.'" *Dublin City School Dist. Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 1997-Ohio-327, ¶ 12, quoting 1 McCormick, *Evidence*, § 10, at 40 (4th Ed. 1992).

{¶ 14} Paragraph 18 of Uustal's affidavit merely describes Sidloski's "feelings." He does not articulate his own observations of Sidloski; rather, his

averments simply mirror the averments in Sidloski's affidavit. Therefore, paragraph 18 of Uustal's affidavit is stricken.

{¶ 15} Similarly, paragraphs 6, 7, and 8 of Sidloski's affidavit recount what Uustal told him was said during the in-chambers conference. Because Sidloski was not present during that conference and does not have any personal knowledge of what happened during it, those paragraphs of his affidavit are stricken.

*Appearance of Bias, Prejudice, and/or Impropriety*

{¶ 16} In support of the allegations that Judge Goering should be disqualified to "avoid the appearance of bias, prejudice, and/or impropriety," Uustal states that before oral argument on Yamaha's motion for summary judgment, the judge initiated separate ex parte discussions with counsel for Sidloski and counsel for Yamaha in his chambers, with the agreement of these counsel. The in-chambers conferences were not recorded.

{¶ 17} Uustal claims that during his ex parte discussion with the judge, the judge improperly addressed "multiple substantive matters" like the judge's view of the strength of Yamaha's motion for summary judgment and a motion in limine aimed at Sidloski's expert. According to Uustal, the judge's comments reflected his prejudging the merits of the case.

{¶ 18} Moreover, Uustal asserts that the judge's conduct during oral argument on Yamaha's motion for summary judgment also shows that the judge should be disqualified. Uustal did not provide a transcript of the oral argument. Nonetheless, Uustal claims that Judge Goering made comments at oral argument suggesting that the judge had disregarded evidence submitted in opposition to Yamaha's motion for summary judgment and would fail to look at the evidence in the light most favorable to the nonmovant, Sidloski. Uustal suggests that Judge Goering made these comments because the judge had not fully reviewed the evidence. But even if the judge has fully reviewed the evidence, Uustal maintains, the judge will disregard it because he is prejudiced against personal-injury

4

claimants. In support of his position, Uustal attaches to the affidavit a filing from the underlying case reiterating the evidence in support of Sidloski's claims.

{¶ 19} Attorney Charles A. Rittgers provided a supporting affidavit, but it discusses a hearing on a motion to compel held in February 2024. That hearing is not specifically alleged to be a basis for disqualification in Uustal's affidavit. And Sidloski's supporting affidavit merely describes his feelings and belief that the judge cannot be fair and impartial.

{¶ 20} Judge Goering filed a response and denies that he is biased or prejudiced for or against Sidloski or that he has prejudged the case. The judge also asserts that there is no appearance of impropriety.

{¶ 21} The judge admits that he asked the parties for permission to hold an in-chambers conference separately with counsel for Sidloski and counsel for Yamaha before the August 2 oral argument. Judge Goering asserts that no party objected to the separate in-chambers conferences, and he contends that he proceeded with those separate, unrecorded in-chambers conferences in conformity with Jud.Cond.R. 2.9(A)(1).

{¶ 22} Judge Goering states that each in-chambers conference was brief and addressed whether the parties would agree to continue the trial date because of the voluminous motions (12 filed by Sidloski and 30 by the defendants, including motions in limine). Judge Goering told counsel that if the trial was not continued, then counsel had to be prepared to argue 10 or 15 of the motions in limine at a time during the weeks leading up to the trial. Judge Goering points out that counsel for Yamaha agreed to continue the trial during the separate in-chambers conference and that that night Uustal left a voicemail for the judge's clerk indicating that he too agreed to a continuance.

{¶ 23} The judge admits that he admonished counsel to limit the arguments on summary judgment to the "controlling remaining issues." Judge Goering notes that he had read all the pleadings, motions, and filed depositions and that he was

prepared for oral argument, which is why he advised counsel to narrow their arguments.

**Disqualification of a Common-Pleas-Court Judge**

{¶ 24} As explained above, R.C. 2701.03(A) provides two specific grounds and a catchall provision for the disqualification of a judge of the court of common pleas. Granting or denying an affidavit of disqualification turns on whether the chief justice determines that the interest, bias or prejudice, or disqualification alleged in the affidavit exists. R.C. 2701.03(E).

{¶ 25} The burden falls on the affiant to submit "specific allegations on which the claim of interest, bias, prejudice, or disqualification is based and the facts to support each of those allegations." R.C. 2701.03(B)(1). Therefore, "[a]n affidavit must describe with specificity and particularity those facts alleged to support the claim." *In re Disqualification of Mitrovich*, 2003-Ohio-7358, ¶ 4.

{¶ 26} As stated above, Uustal alleges that Judge Goering should be disqualified to "avoid the appearance of bias, prejudice, and/or impropriety."

{¶ 27} R.C. 2701.03(A) "speaks in terms of *actual* bias and prejudice." (Emphasis in original.) *In re Disqualification of Navarre*, 2024-Ohio-3336, ¶ 21. The General Assembly did not define "bias or prejudice" for purposes of the statute. However, as defined in prior disqualification cases, "[t]he term 'bias or prejudice' 'implies a hostile feeling or spirit of ill-will or undue friendship or favoritism toward one of the litigants or his attorney, with the formation of a fixed anticipatory judgment on the part of the judge, as contradistinguished from an open state of mind which will be governed by the law and the facts.'" *In re Disqualification of O'Neill*, 2002-Ohio-7479, ¶ 14, quoting *State ex rel. Pratt v. Weygandt*, 164 Ohio St. 463, 469 (1956). "'Bias or prejudice on the part of a judge will not be presumed. In fact, the law presumes that a judge is unbiased and unprejudiced in the matters over which he presides, and bias or prejudice must be strong enough to overcome the presumption of his integrity.'" *Id.* at ¶ 16, quoting 48A C.J.S., Judges, § 108, at

6

731 (1981). A determination of whether a judge is biased or prejudiced is based on the judge's words and/or actions and whether those words and/or actions convey that the judge is predisposed to a particular outcome of a case. *In re Disqualification of Berhalter*, 2023-Ohio-4881, ¶ 28.

{¶ 28} "A judge's subjective bias, however, is not easy to discern. The United States Supreme Court has recognized that '[t]o establish an enforceable and workable framework, the Court's precedents [also] apply an objective standard that, in the usual case, avoids having to determine whether actual bias is present.'" (Bracketed text in original.) *In re Disqualification of Clark*, 2023-Ohio-4774, ¶ 47, quoting *Williams v. Pennsylvania*, 579 U.S. 1, 8 (2016). Under an objective standard, "[t]he question is '"whether the judge's impartiality might reasonably be questioned by the average person on the street who knows all the relevant facts of a case."'" *United States v. Melton*, 738 F.3d 903, 905 (8th Cir. 2013), quoting *Moran v. Clarke*, 296 F.3d 638, 648 (8th Cir. 2002) (en banc), quoting *In re Kansas Pub. Emps. Retirement Sys.*, 85 F.3d 1353, 1358 (8th Cir. 1996). "'[T]hese outside observers are less inclined to credit judges' impartiality and mental discipline than the judiciary itself will be.'" *In re Nettles*, 394 F.3d 1001, 1002 (7th Cir. 2005), quoting *In re Mason*, 916 F.2d 384, 386 (7th Cir. 1990).

{¶ 29} A judge is "otherwise . . . disqualified" under R.C. 2701.03(A) when none of the express bases for disqualification—interest, relation to a party, bias, or prejudice—apply but other grounds for disqualification exist. *See In re Disqualification of Schooley*, 2023-Ohio-4332, ¶ 19 (citing examples of when a judge could be "otherwise . . . disqualified" for purposes of R.C. 2701.031). "[E]ven in cases in which no evidence of actual bias or prejudice is apparent, a judge's disqualification may be appropriate to avoid an appearance of impropriety or when the public's confidence in the integrity of the judicial system is at issue." *In re Disqualification of Crawford*, 2017-Ohio-9428, ¶ 6. In addition, an ex parte communication between a judge and a party may be a ground for disqualification

when "the communication either was initiated by the judge or addressed substantive matters in the pending case." *In re Disqualification of Calabrese*, 2002-Ohio-7475, ¶ 2. Jud.Cond.R. 2.11 sets forth additional circumstances when a judge must be disqualified, including when a family member of the judge has an economic interest in the subject matter in controversy, Jud.Cond.R. 2.11(A)(3), and when the judge likely will be a material witness in the proceeding, Jud.Cond.R. 2.11(A)(2)(d).

{¶ 30} These examples are not exhaustive, but they illustrate that a judge may still be disqualified even when the express statutory grounds for disqualification are not applicable.

{¶ 31} As noted above, a judge may be disqualified to avoid an appearance of impropriety. An appearance of impropriety exists when "'the [judge's] conduct would create in reasonable minds a perception that the judge's ability to carry out judicial responsibilities with integrity, impartiality and competence is impaired.'" *Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 888 (2009), quoting American Bar Association, Annotated Model Code of Judicial Conduct, Canon 2A, Commentary (2004); *see also id.* at 890 (noting that the codes of judicial conduct provide more protection than due process requires). The perspective of the ordinary reasonable person is considered, and that person "is presumed to be fully informed of all the relevant facts in the record—not isolated facts divorced from their larger context." *In re Disqualification of Gall*, 2013-Ohio-1319, ¶ 6.

**Analysis**

{¶ 32} Because Uustal bases the allegations on the same evidence, they are analyzed together. For the reasons explained below, Uustal has not established that Judge Goering's disqualification is warranted.

{¶ 33} At the outset, Uustal's affidavit does not claim, nor does the evidence support, that Judge Goering's behavior or conduct exhibits actual bias or prejudice as required by R.C. 2701.03(A). Therefore, this case turns on whether there is an appearance of bias, prejudice, or impropriety. There is not.

{¶ 34} Article IV, Section 5(C) of the Ohio Constitution requires the chief justice to "pass upon the disqualification of any judge of the courts of appeals or courts of common pleas or division thereof." That enumerated power does not give the chief justice unilateral authority to determine whether a judge has violated the Code of Judicial Conduct. Judicial-misconduct complaints are heard by the Board of Professional Conduct, Gov.Bar R. V(2)(B)(1), and are ultimately decided by all justices of the Supreme Court of Ohio, Gov.Bar R. V(17)(D)(1), after an independent investigation by the Office of Disciplinary Counsel or the certified-grievance committee of the Ohio State Bar Association, Gov.Bar R. V(4)(A)(1), (5)(B)(2), and (9)(C)(1). Therefore, Uustal's suggestion that the judge violated Jud.Cond.R. 2.9 is not properly brought in this affidavit-of-disqualification proceeding.

{¶ 35} Further, the chief justice does not have the unilateral authority to resolve legal issues that are subject to appellate review. *In re Disqualification of Gallagher*, 2023-Ohio-2977, ¶ 50. To the extent that Uustal claims that the judge misunderstood or disregarded the evidence he submitted in opposition to Yamaha's motion for summary judgment, that is a question properly presented on appeal, not in this proceeding.

{¶ 36} Uustal supports his allegations that the judge should be disqualified by pointing to the separate in-chambers conferences conducted on August 2 and the judge's conduct during oral argument on Yamaha's motion for summary judgment.

{¶ 37} As it relates to the separate in-chambers conferences with counsel, the record shows that the judge placed the matter before the parties and asked them whether there were any objections. Uustal did not object. He therefore cannot attack the judge's decision to hold separate in-chambers conferences when he consented to them. *See In re Disqualification of Christiansen*, 1999-Ohio-7, ¶ 4 (declining to disqualify a judge when "the parties authorized the judge to conduct ex parte settlement discussions with representatives of each party in an effort to

settle the case"); *In re Disqualification of Dellick and Quinn*, 2017-Ohio-5542, ¶ 6 ("judges may confer separately with the parties and their lawyers in an effort to settle matters, as long as the parties consent to the judge's involvement").

{¶ 38} Uustal also claims that the judge's behavior and conduct during oral argument support disqualification, but—again—Uustal did not provide a copy of the oral-argument transcript. Unsubstantiated allegations do not establish that a judge should be disqualified. *See Clark*, 2023-Ohio-4774, at ¶ 42. Moreover, Uustal's contention depends on speculation. He alleges that based on the judge's questions and statements during oral argument, the judge *may* improperly weigh or construe the record in favor of Yamaha when deciding the motion for summary judgment. But "[s]peculation and innuendo are insufficient to establish bias or prejudice or the appearance of impropriety." *In re Disqualification of Celebrezze*, 2023-Ohio-4383, ¶ 93.

{¶ 39} Disqualification of a common-pleas-court judge requires evidence of one of the bases for disqualification under R.C. 2701.03(A). A claim that there is an appearance of bias or prejudice or an appearance of impropriety must be supported so that a reasonable person fully informed of all the facts would believe that the judge's ability to preside over the case is impaired. Because there is nothing in Uustal's affidavit of disqualification to support that belief in this case, the allegations lack merit.

{¶ 40} Lastly, although Judge Goering's decision to conduct the separate in-chambers conferences does not, under these circumstances, require his disqualification, best practices would counsel that judges refrain from conducting unrecorded in-chambers conferences. Doing that would prevent any question of what was said and avoid any party or counsel from asserting in an affidavit of disqualification that there is the appearance of bias, prejudice, or impropriety.

## Conclusion

**{¶ 41}** The affidavit of disqualification is denied.  The case shall proceed before Judge Goering.

_____